UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES J. FARLEY,

        Plaintiff,

vs.

COUNTRY COACH, INC.,                Case No. 05-CV-71623
                                      HON. GEORGE CARAM STEEH

        Defendant/
        Third-Party Plaintiff,

vs.

TECHNOLOGY RESEARCH CORPORATION,

        Defendant/
        Third-Party Defendant.

_____/

ORDER DENYING COUNTRY COACH'S MOTION
FOR SUMMARY JUDGMENT (#36), DENYING TRC'S MOTION FOR
SUMMARY JUDGMENT (#38), AND GRANTING PLAINTIFF'S MOTION FOR
REINSTATEMENT OF IMPLIED WARRANTY CLAIMS (#42)

      Defendant/third-party plaintiff Country Coach moves for summary judgment of

plaintiff Charles Farley's claims of breach of express warranty and liability under the

Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 et seq.. Defendant/third-party

defendant Technology Research Corporation ("TRC") moves for summary judgment of

Farley's breach of express and implied warranty claims, as well as MMWA claims.  Farley

moves for reinstatement of his breach of implied warranty claims as alleged against

Country Coach.  A hearing on the motions was held on August 28, 2006.  For the reasons

set forth below, Country Coach's motion for summary judgment will be DENIED.  TRC's

motion for summary judgment will be DENIED.  Farley's motion to reinstate his breach of implied warranty claims as alleged against Country Coach will be GRANTED.

## I. Background

Farley filed a complaint on April 25, 2005 alleging that he purchased a motor home recreational vehicle ("RV") on August 28, 2003 manufactured and sold by defendant Country Coach.  Farley purchased the RV in Tennessee from non-party Buddy Gregg Motor Home.  Farley alleges the RV had a defective electrical system, a sagging floor, and noxious fuel-fumes leaking into the cabin.  Farley alleged Country Coach was liable for breach of express and implied warranties and violations of the MMWA.  On November 29, 2005, the court granted Country Coach partial summary judgment as to Farley's implied warranty claims for lack of contractual privity with Country Coach.

Country Coach filed third-party claims against TRC on August 15, 2005 alleging TRC supplied a faulty electrical transfer switch which was installed into Farley's RV.  Country Coach alleged third-party claims of  statutory and common law indemnity, statutory and common law contribution, breach of express and implied warranties, violation of the MMWA, and revocation of acceptance.  On March 13, 2006, the court granted TRC partial summary judgment as to Country Coach's third-party claims of statutory and common law contribution, liability under the MMWA, and revocation of acceptance.  Country Coach was granted leave to file a notice of non-party fault under M.C.R. 2.112(K)(3)[1] with respect to

---

[1]  "(K) Fault of Nonparties; Notice.

\*          \*          \*

(3) Notice.

(a) A party against whom a claim is asserted may give notice of a claim that a nonparty is

TRC, and filed the notice on March 15, 2006.  Farley filed a First Amended Complaint on

March 29, 2006 adding TRC as a party-defendant and alleging that TRC is liable for breach

of express and implied warranties and violations of the MMWA.

## II. Summary Judgment

### A. Standard

Federal Rule of Civil Procedure 56(c) empowers the court to render summary

judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law."  See

Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001).  The Supreme Court has affirmed

the court's use of summary judgment as an integral part of the fair and efficient

administration of justice.  The procedure is not a disfavored procedural shortcut.  Celotex

Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox v. Kentucky Dept. of Transp., 53

F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether

the evidence presents a sufficient disagreement to require submission to a jury or whether

---

wholly or partially at fault. A notice filed by one party identifying a particular nonparty serves as notice by all parties as to that nonparty.

(b) The notice shall designate the nonparty and set forth the nonparty's name and last known address, or the best identification of the nonparty that is possible, together with a brief statement of the basis for believing the nonparty is at fault.

(c) The notice must be filed within 91 days after the party files its first responsive pleading. On motion, the court shall allow a later filing of the notice on a showing that the facts on which the notice is based were not and could not with reasonable diligence have been known to the moving party earlier, provided that the late filing of the notice does not result in unfair prejudice to the opposing party."

it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

### B. Record

Farley received a Country Coach written limited warranty, which reads in part:

**WARRANTY COVERAGE TO OWNER**
Country Coach, Inc. of Junction City, Oregon (Country Coach) warrants the house/coach portion of each new Country Coach motorhome to the first retail purchaser as follows:

*       *       *

**WARRANTY PERIOD**
Except as provided under the Structural Warranty described immediately below, the term of this limited warranty is 12 months from the date the motorhome is delivered to the first retail purchaser. Warranty repairs do not

4

extend the warranty term for the house/coach portion of the motorhome or for any specific part, component or system.

*        *        *

**IMPLIED WARRANTIES**
The house/coach portion of each new Country Coach motorhome may be subject to warranties implied by law including the implied warranty of merchantability and the implied warranty of fitness for a particular purpose. Any such implied warranties are limited to the period of 12 months from the date the motorhome is delivered to the first retail purchaser, except for any implied warranties on the welds described in the above Structural Warranty which are limited for the period of five years from the date the motorhome is delivered to the first retail purchaser, or 50,000 miles, whichever occurs first. Some states do not allow limitations on how long an implied warranty lasts, so the above limitation may not apply to you.

*        *        *

**COUNTRY COACH RESPONSIBILITY**
Upon notice of the defect, any part of the motorhome subject to this limited warranty which is found to be defective in material or workmanship will be repaired or replaced, at Country Coach's option, without charge to the owner for parts or labor.  For purposes of this limited warranty, a part is not defective in material or workmanship if it performs substantially within the design specifications of the part.

Plaintiff's August 3, 2006 Exhibit 1.

The record indicates that Farley purchased the RV on August 28, 2003.  Pre-sale inspection of the RV revealed defects in the electrical power inverter, the electronic navigation system, the dashboard air conditioning ("A/C"), a room slide-out and leveler, the generator, and fuel and oil gauges.  Repairs were made, but 12 miles from the dealership, Farley allegedly discovered that the dashboard A/C did not work.  On October 1, 2003, Farley drove the RV on a trip to New England, and allegedly discovered diesel/glycol fumes in the cabin, an engine oil leak, and an electrical system malfunction that eventually shut down the electrical system.  Repairs were made by the Buddy Gregg dealership in

5

Tennessee over the course of 11 days, from October 3-14, 2003.  Farley reported other problems with the fuel and oil gauges, the ignition switch, a refrigerator latch, and a water pump.  Immediately after leaving the repair facility, Farley assessed that the fuel and oil gauges were not working properly.

In November 2003, Farley again drove to the Buddy Gregg facility for installation of a couch and repairs to a slide-out, a loose slide-out floor, a leak in the freshwater system, an axle-oil leak, the dashboard A/C, and the fuel and oil gauges.  These services took 10 days.  On his return trip, Farley assessed that the fuel and oil gauges were not operating properly, and that a slide-out was still sagging.  Farley stored the RV in a garage for the remainder of November 2003 through most of March 2004.

On March 28, 2004, Farley again drove to the Buddy Gregg facility in Tennessee to address Farley's requests to repair the fuel and oil gauges, seals on certain wheels, loose kitchen floor tiles, a "wobbly" steering wheel, a refrigerator latch, a holding tank gauge, and ceiling tiles that had melted due to the placement of a television projector. According to Farley, all repairs were made except as to the oil gauges.  Farley maintains that, during the repair work, the electrical system shut down, requiring the voltage regulator to be replaced, and that during final inspection, the air compressor activated and the electrical system shut down.  The repairs took 12 days, and Farley returned to Michigan on April 9, 2004.  Evidence indicates a Buddy Gregg employee first opined that there was a problem with the RV's electrical transfer switch.  While driving back to Michigan, Farley assessed that the fuel gauge was not working properly.

Once again, according to Farley, the RV's electrical system became inoperable.  On June 24, 2004, Farley drove the RV to Holland Motor Homes in Michigan for repairs.  The

6

Holland facility assessed a faulty transfer switch box and replaced the box twice, yet the electrical system continued to fail. Country Coach supplied Holland with an upgraded TRC box which also failed after testing. According to Farley, Holland repairmen advised him to by-pass the "Silver Leaf" electrical system. Holland replaced an electrical inverter, reset the newly installed TRC transfer box, and the RV's electrical issues were temporarily resolved. On or around July 8, 2004, TRC notified Farley and other RV owners of a defective electrical transfer box, informing RV owners that TRC had contacted Country Coach. Holland advised Farley that an upgraded TRC box had already been installed. Farley retrieved the RV from Holland on July 13, 2004 after a period of 19 days.

In August 2004, Farley drove the RV to Phoenix, Arizona. During the trip, Farley assessed problems with glycol fumes in the cabin, leaking wheel hub seals, the refrigerator latch, a "popping noise" in a slide-out, the fuel gauge, the dashboard A/C, and a sagging slide-out. Farley drove the RV to an Oregon repair facility, and while repairs were being made, the air compressor allegedly energized, causing a need for further electrical repairs. On August 28, 2004, Country Coach's one-year limited warranty expired by its terms.

In January 2005, Farley drove the RV to Las Vegas, Nevada. Farley assessed electrical problems and a heating system failure. Farley filed this lawsuit on April 25, 2005. In July 2005, Farley drove the RV on a trip to Mackinaw City, Michigan. According to Farley, a defect in a transmission gauge caused the engine to shut down. Repairs were made at William Allison Saginaw Transmission, but the gauge allegedly remained faulty. On August 5, 2005, Farley drove the RV to the Holland facility for additional repairs to the dashboard A/C, the electrical generator, gauges, an electrical switch, a sliding floor, and a frozen outside storage compartment, as well as to address glycol fumes in the cabin.

7

In October 2005, during a trip to Traverse City, Michigan, Farley assessed an electrical system failure.

Farley began an RV trip to California on January 8, 2006.  During the trip, Farley assessed problems with the dashboard A/C, fuel and oil gauges, diesel/glycol fumes inside the cabin, a shutdown of the "Silver Leaf" electrical system, and a broken linkage chain on a slide-out. Farley drove the RV to Guaranty RV in Gilmore, California for repairs.  The slide-out repair had to be made in Oregon.  Farley returned to Michigan without the RV on January 26, 2006 and waited for the repairs to be completed.  On February 27 and March 6, 2006, Farley inquired by e-mail as to the repair status of his RV.  Farley was informed on March 14, 2006 that he could pick-up the RV.  On his return drive from Oregon to Michigan, Farley assessed problems with the RV's dashboard A/C, the fuel and oil gauges, a "twisted" slide-out, a sagging drop-down floor, and glycol fumes.  In April 2006, Farley drove the RV to the Buddy Gregg facility in Tennessee and received a $245,000.00 trade-in credit toward the purchase of a 2006 Country Coach RV.

## C. Analysis

### i. Country Coach's Motion for Summary Judgment

Country Coach argues it is entitled to summary judgment of Farley's breach of express warranty claims and MMWA claims because its one-year "repair-or-replace" warranty is not an express warranty as a matter of law.  Country Coach continues that Farley cannot prove that the limited warranty failed in its essential purpose, or that any of the claimed defects were not remedied.  Country Coach further argues that Farley cannot prove he sustained any damages considering he received a $245,000.00 trade-in credit for his fully repaired RV.  Country Coach asserts that Farley cannot recover under the MMWA

8

because the RV's warranty is a "limited warranty" as defined under the MMWA, the breach of which only entitles a party to reimbursement of costs and expenses incurred in a lawsuit. Country Coach maintains in the alternative that it is entitled to the dismissal of Farley's claims due to Farley's failure to cooperate during discovery.

The Sixth Circuit recently held that "[t]he Michigan Supreme Court would likely . . . interpret a repair-or replace warranty extended by a manufacturer to be an express warranty under the [Michigan Uniform Commercial Code] ."  Pack v. Damon Corp., 434 F.3d 810, 814 (6th Cir. 2006).  See also Pidcock v. Ewing, 435 F. Supp. 2d 657, 662 (E.D. Mich. 2006).  Country Coach's argument that their "repair-or-replace" warranty is not a warranty as a matter of Michigan law is without merit.

Country Coach argues Farley cannot aggregate the separate repairs made to the RV to prove that the limited warranty failed in its essential purpose, citing Pidcock, 435 F. Supp. 2d at 663 (citing Computer Network, Inc. v. A.M. General Corp., 265 Mich. App. 309, 696 N.W.2d 49, 55 (2005)). Country Coach proffers expert reports authored by Michael Pelletier and Butch Williams as establishing beyond dispute that Farley's claimed defects were all repaired as of February 28, 2006, that the claimed defects did not substantially impair the value of the RV, and that the RV's repair history does not support a breach of warranty claim.  Country Coach asserts that the experts' attestations will be irrebuttable at trial because Farley has not employed his own experts.

To succeed on his claim that the limited warranty failed in its essential purpose, Farley must prove that Country Coach failed to repair or replace a covered defect within a reasonable time.  Pack, 434 F.3d at 816 (citing Kelynack v. Yamaha Motor Corp., 152 Mich. App. 105, 394 N.W.2d 17, 20 (1986)).  Over the course of the 12-month warranty

9

period, from August 28, 2003 to August 28, 2004, the RV underwent 52 days of repairs for repeated complaints related to the dashboard A/C, the RV's electrical system, diesel/glycol fumes in the cabin, and malfunctioning fuel and oil gauges.  The record indicates Farley continued to experience dashboard A/C problems, electrical system failures, fumes in the cabin, and oil and fuel gauge problems in January 2005, August 2005, October 2005 and January 2006.  Pelletier's and Williams' expert opinions of the RV's condition following a February 28, 2006 inspection are not dispositive on the issue of whether the RV's defects were repaired within a reasonable time after they were first reported in 2003, let alone within the 1-year warranty period that expired on August 28, 2004.  See Pack, 434 F.3d at 815, 817.  Construing the record in a light most favorable to Farley, a reasonable jury could conclude that Country Coach's limited "repair-or-replace" warranty failed in its essential purpose.  Amway Distributors, 323 F.3d at 390.  If a jury concludes that the limited warranty failed in its essential purpose, Farley could recover damages for breach of warranty.  Pack, 434 F.3d at 816 (citing M.C.L. § 440.2719(1)(a), (2)[2]).

Country Coach's argument that its expert's opinions are irrebuttable in the absence

---

[2]  "(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages

(a) the agreement may provide for remedies in addition to or in substitution for those provided in this article and may limit or alter the measure of damages recoverable under this article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and

(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this act."  M.C.L. § 440.2719(1-2).

10

of conflicting expert opinions is without merit.  Circumstantial evidence alone is sufficient to prove a defect and its source.  See Pack, 434 F.3d at 815 (citing Caldwell v. Fox, 394 Mich. 401, 231 N.W.2d 46, 51 (1975)); Sundberg v. Keller Ladder, 189 F. Supp. 2d 671, 681 (E. D. Mich. 2002); Chambers v. General Trailer Manufacturing, No. 04-71066, 2006 WL 1851008, at *2 (E.D. Mich. July 5, 2006) (slip op.) (quoting Uganski v. Little Giant Crane & Shovel, Inc., 35 Mich. App. 88, 192 N.W.2d 580, 588 (1971) for the legal principle that "no triers of fact are bound to accept opinion testimony, however expert and authoritative, as they proceed to determine issues of fact duly committed to them for finding or verdict.").  With respect to the allegedly defective dashboard A/C and electrical system, Pelletier and Williams attest that both were working properly on February 28, 2006. Pelletier and also attest that they detected no glycol fumes in the RV's cabin on February 28, 2006.  The record reflects, however, that the RV's dashboard A/C problems, electrical system malfunctions, and cabin fume problems have a history of reoccurrence over the life of Farley's ownership of the RV.  Further, even assuming these problems were permanently fixed as of February 28, 2006, such would not prevent Farley from proving that the limited warranty failed in its essential purpose well before February 28, 2006, and that warranties were breached prior to February 28, 2006, entitling Farley to recover certain damages.  Pack, 434 F.3d at 816; citing M.C.L. § 440.2719(1)(a), (2).

Schultz v. General R.V. Center, No. 04-72562, 2006 WL 2583140 (E.D. Mich. Sept. 6, 2006)[3] is factually distinguishable.  Unlike here, the Schutz case did not involve an alleged history of reported defects and failed repairs to the same allegedly defective

---

[3]  On September 18, 2006, the court granted in part Country Coach's motion to file the Schultz opinion as a supplemental brief without further briefing argument.

11

components.  See Schultz, 2006 WL 2583140 at *6 ("Plaintiffs did not, as required under the limited warranty, contact Damon in writing about continued problems with their RV prior to filing suit . . . .").  This is not a case where Farley has "lumped together" unrelated and reasonably expected repairs to show that the RV was out of service for an unreasonable time.  Id. at *11 (citing Computer Network, 696 N.W.2d at 55); Pidcock, 2006 WL 1494978 at *4 (same).  See Computer Network, 696 N.W.2d at 55 (noting that "[t]here were numerous different repairs to the vehicle over a lengthy period, most of which were not repeat repairs.").  On the instant record, a jury could conclude that Country Coach's repeated attempted repairs to the same component over a considerable period of time failed, thus causing Country Coach's limited "repair-or-replace" warranty to fail in its essential purpose.  Pack, 434 F.3d at 816.

Country Coach's argument that Farley cannot recover any damages because his receipt of a $245,000.00 trade-in credit represents the fair market value of the fully repaired RV is not persuasive.  If Farley prevails on his claim that the limited warranty failed in its essential purpose, Farley will be entitled to pursue remedies available under Michigan's U.C.C. beyond the mere repair of the vehicle.  Pack, 434 F.3d at 816; citing M.C.L. § 440.2719(1)(a), (2).  Country Coach has not come forward with adequate argument or evidence to place the jury issue of damages beyond all reasonable dispute simply because Farley received a $245,000.00 trade-in credit on a new vehicle for which he initially paid $417,000.00.  Amway Distributors, 323 F.3d at 390.  Should Farley recover damages under a state law claim of breach of warranty, his recovery of damages under the MMWA will be the same, but not duplicative, with the additional remedy of an award of reasonable costs and fees.  See Chambers, 2006 WL 1851008, at *5 (and internal citations).  In that it

12

remains possible for Farley to prove a state law breach of warranty claim, Country Coach is not entitled to summary judgment of Farley's derivative MMWA claim.  At the August 28, 2006 hearing, Country Coach waived its argument for dismissal premised on Farley's failure to produce certain discovery materials.

Remaining issues of material fact preclude entry of summary judgment in favor of Country Coach.  Amway Distributors, 323 F.3d at 390; McLean, 224 F.3d at 800.  Country Coach's motion for summary judgment will be denied.

### ii. TRC's Motion for Summary Judgment

TRC argues it is entitled to summary judgment of Farley's claims based on an alleged defective electrical transfer switch because Farley has no proof that the transfer switches installed in his RV were manufactured by TRC.  TRC further asserts Farley cannot show that a defective transfer switch caused his claimed electrical problems, as opposed to Country Coach's defective installation of an electrical transfer switch.  TRC also relies on the opinions of Country Coach experts Pelletier and Williams that the RV's electrical system was working properly on February 28, 2006.  TRC argues that Farley cannot prove a breach of warranty claim because it is undisputed that TRC sent a new transfer switch to Country Coach for installation into the RV nine days after TRC first received notice of a faulty transfer switch.  TRC reiterates Country Coach's arguments that Farley cannot prove damages following his receipt of a $245,000.00 trade-in credit, and that Farley's MMWA claim fails for lack of proof of a requisite state law breach of warranty claim.

Farley has come forward with circumstantial evidence that would allow a reasonable jury to conclude that a defective TRC electrical transfer switch was installed into Farley's RV.  Pack, 434 F.3d at 815; Caldwell, 231 N.W.2d at 51; Sundberg, 189 F. Supp. 2d at

13

681; Chambers, 2006 WL 1851008 at *2; Uganski, 192 N.W.2d at 588.  Farley purchased

the RV on August 28, 2003.  Prior to taking delivery of the RV, on August 8, 2003, Buddy

Gregg performed warranty work on the electrical system's inverter and electrical transfer

switch.  Country Coach Exhibits 3, 4.  On October 3, 2003, warranty work was again

performed on the RV due to problems with the electrical inverter, charger, and relay switch.

Country Coach Exhibits 9, 10.  On April 4, 2003, a Buddy Gregg employee first discovered

a problem with the RV's electrical transfer switch.  Country Coach Exhibit 19, 21.  In a letter

dated July 8, 2004, TRC Vice President of Marketing and Sales Ned Schiff notified Farley

that "[y]our Country Coach [RV] has been equipped with a Surge Guard Plus™ automatic

transfer switch manufactured by Technology Research Corporation (TRC)."  Country

Coach Exhibit 22.  The letter continues:

> In some instances, certain conditions may occur that could result in a
> premature failure of the transfer switch or a shut down of power to the coach.
> Upgrades have been made to the Surge Guard to prevent these
> occurrences.  The following instructions are provided to allow for this upgrade
> to be done to your coach through an authorized service center at no charge
> to you.

Id.  After an updated TRC electrical transfer switch was installed, Farley continued to

experience electrical system failures consistent with a "failure of the transfer switch or a

shut down of power to the coach"; Farley testified that as late as January 2005, "the unit

shut down and the batteries went dead and the generator didn't restart."  Farley November

8, 2005 Deposition Transcript, at 131.  July 2004 e-mails exchanged between TRC and

Country Coach provide additional circumstantial evidence that both the initial and

replacement electrical transfer switches were TRC switches subject to failure:

> Doug, having problems getting transfer switch's [sic] from TRC.  John says
> they aren't available.  Should we have BGTN order from parts us [sic] and

14

then we bill back TRC for the extra expense? Have some customers with out [sic] power and want power, like now.

*       *       *

Doug, John says according to TRC all the other transfer switch's [sic] out there are going to do the same thing. Who is in charge of buying these Transfer switch's. [sic] John has voice mail out to a Jim Riccio and Cory Davis TRC supply. All they have told John is there isn't any available. This transfer switch is a vital part of our motor home. Can you assist? Thanks[.]

Farley Exhibit B (paragraphs inverted to clarify chronology).

Construing this and other record evidence in a light most favorable to Farley, reasonable jurors could also conclude that TRC's written warranty failed in its essential purpose because TRC did not provide Farley with a non-defective electrical transfer switch, causing the TRC warranty to likewise fail in its essential purpose. Pack, 434 F.3d at 816. Evidence in the record indicates that, even after TRC supplied Country Coach with a replacement switch, the RV's electrical system continued to fail under circumstances that would allow a reasonable juror to find the failure was related to the replacement TRC switch. These electrical failures continued after the TRC warranty expired "one year form the date of installation," with electrical system failures allegedly continuing in August and October 2005. TRC's argument that it cannot be held liable for breach of warranty because it sent a replacement switch to Country Coach for installation into Farley's RV in July 2004 is not well taken. As with the same argument advanced by Country Coach, Pelletier's and Williams' expert opinions of the RV's condition after their February 28, 2006 inspection of the vehicle are not dispositive on the issue of whether the defective electrical transfer switches were replaced within a reasonable time. See Pack, 434 F.3d at 815, 817. Likewise, and for the same reasons the court rejected Country Coach's arguments, TRC's

15

arguments that Farley cannot recover damages due to the $245,000.00 trade-in credit he received, and that he cannot maintain an actionable MMWA claim, are not well taken.

Remaining issues of material fact preclude entry of summary judgment in favor of TRC. Amway Distributors, 323 F.3d at 390; McLean, 224 F.3d at 800. TRC's motion for summary judgment will be denied.

### III. Reinstatement of Implied Warranty Claim

On November 29, 2005, the court granted Country Coach partial summary judgment as to Farley's breach of implied warranty claims for lack of contractual privity. On January 6, 2006, the Sixth Circuit issued its published opinion in Pack, expressly holding inter alia that "Michigan has abandoned the privity requirement for implied warranty claims[.]" Pack, 434 F.3d at 820. Country Coach's argument that a split of authority exists in the Sixth Circuit, based on the unpublished decision in Ducharme v. A& S RV Center, 127 Fed. Appx. 204 (6th Cir. 2005), is without merit. See Sixth Circuit Rule 28(g). For the reasons stated above, Country Coach is not entitled to summary judgment of the implied warranty claims in that questions of fact remain whether the RV was defective when it left Country Coach's possession, and whether Farley is entitled to recover damages. Amway Distributors, 323 F.3d at 390; McLean, 224 F.3d at 800. Farley is entitled to reinstatement of his claims of breach of implied warranty as alleged against Country Coach. See Fed. R. Civ. P. 54(b).

### IV. Conclusion

Defendant Country Coach's motion for summary judgment is hereby DENIED. Defendant TRC's motion for summary judgment is hereby DENIED. Plaintiff Farley's motion to reinstate his breach of implied warranty claims as alleged against Country Coach

16

is hereby GRANTED.  Farley's breach of implied warranty claims as alleged against

Country Coach in Count I of the April 25, 2005 Complaint are hereby REINSTATED.

SO ORDERED.

Dated:  November 14, 2006

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
November 14, 2006, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk