UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES J. FARLEY,

        Plaintiff,              Case No. 05-71623

v.                                  Magistrate Judge R. Steven Whalen

COUNTRY COACH, INC.,
an Oregon Corporation, and
TECHNOLOGY RESEARCH
CORPORATION,
a Florida Corporation,

        Defendants,
_____/

**OPINION AND ORDER RE: POST-JUDGMENT MOTIONS**

Plaintiff Charles Farley purchased a 2004 Country Coach Magna Motor Home, a high-end recreational vehicle. After experiencing numerous problems with this vehicle, he brought this action under the Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. §2310(d). Following trial, a jury found that Defendant Country Coach, Inc. ("Country Coach") breached an implied warranty of merchantability, and awarded damages in a total amount of $191,784.00.[1] Specifically, the jury allocated the damages as follows:

---

[1] The jury found no cause of action as to Defendant TRC.

Difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted: **$189,000.00**

The amount of incidental and consequential damages sustained by Plaintiff, Charles Farley, because of the Defendants breach of warranty: **$2,784.00**

The jury also found that the Plaintiff did not fail to mitigate his damages, and thus did not reduce the award because of a failure to mitigate.

Defendant Country Coach has now filed a Motion for Modification of Judgment, for Remittitur [Docket #128] and a Motion for Judgment as a Matter of Law (JNOV) or, Alternatively, for a New Trial [Docket #129]. For the reasons discussed below, both motions will be DENIED.

### I. Judgment as a Matter of Law / New Trial [Docket #129]

Before the submission of this case to the jury, Defendant moved for a judgment as a matter of law, pursuant to Fed.R.Civ.P. 50(a). This Court denied the motion. Defendant now renews the motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b), and, in the alternative, moves for a new trial pursuant to Fed.R.Civ.P. 59(a).

#### A. Standard of Review–Rule 50(b)

"In a diversity action such as this, a state law standard of review is applied when a Rule 50(b) motion is based on a challenge to the sufficiency of the evidence necessary to support the jury's verdict." *In re Brown,* 342 F.3d 620, 626 -627 (6th Cir. 2003), citing *Morales v. Am. Honda Motor Co. Inc.,* 151 F.3d 500, 506 (6th Cir.1998). The Defendant correctly cites *Matras v. Amoco Oil Co.,* 424 Mich. 675, 385 N.W.2d 586, 588 (1986), as

follows regarding the Michigan standard:

> "In reviewing a trial court's failure to grant a defendant's motion for a directed verdict or judgment notwithstanding the verdict, we examine the testimony and all legitimate inferences that may be drawn in the light most favorable to the plaintiff. If reasonable jurors could honestly have reached different conclusions, the motion should have been denied. If reasonable jurors could disagree, neither the trial court nor this Court has the authority to substitute its judgment for that of the jury." (Footnotes omitted).

A Rule 50(b) motion is addressed to the court's discretion. *In re Brown, supra.*

### B. Standard of Review–Rule 59

Fed.R.Civ.P. 59(a) provides that following a jury verdict, the court may grant a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." In *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147 (1940), the Supreme Court held that "motion for new trial may invoke the discretion of the court in so far as it is bottomed on the claim that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the moving party." The grant or denial of a motion for new trial under Rule 59(a) is addressed to the court's broad discretion, *J.C. Wyckoff & Assoc. v. Standard Fire Ins. Co.,* 936 F.2d 1474, 1487 (6th Cir.1991) (quoting *Logan v. Dayton Hudson Corp.,* 865 F.2d 789, 790 (6th Cir.1989)).

However, where a Rule 59 motion asks a court to set aside or modify a jury verdict that was grounded in properly admitted evidence, a court must proceed cautiously, with due deference to the parties' Seventh Amendment right to a jury trial. In *Duncan v. Duncan,* 377 F.2d 49, 54 (6th Cir.1967), the Sixth Circuit cautioned:

> "Where no undesirable or pernicious element had occurred or been introduced into the trial and the trial judge nonetheless grants a new trial on the ground that the verdict was against the weight of the evidence, the trial judge in negating the jury's verdict has, to some extent at least, substituted his judgment of the facts and the credibility of the witnesses for that of the jury. Such an action effects a denigration of the jury system and to the extent that new trials are granted the judge takes over, if he does not usurp, the prime function of the jury as the trier of facts."

(quoting *Lind v. Schenley Indus., Inc.,* 278 F.2d 79, 90 (3d Cir.1960) (en banc)). Likewise, the Sixth Circuit in *Denhof v. City of Grand Rapids,* 494 F.3d 534, 543-44 (6th Cir.2007), recently stated:

> "In considering a motion for a new trial on the ground that the verdict is against the weight of the evidence, the court is not to set aside the verdict simply because it believes that another outcome is more justified.... The court is to accept the jury's verdict if it is one which reasonably could have been reached.... To put it more succinctly, this court will overturn a grant of a motion for a new trial on the basis that the verdict was against the weight of the evidence where it is clear that the jury verdict was reasonable." (Citations and internal quotes omitted).

### C. Discussion

Defendant argues first that the evidence could not support a finding of breach of implied warranty of merchantability, that is, that the motor home was not fit for the purpose of "RVing." Defendant states, at p.4 of his Brief in Support of his Motion [Docket #129]:

> "As the Plaintiff did not introduce sufficient evidence that the motor home was not fit for the purpose of RVing, or even what RVing entails, Judgment of [sic] Matter of Law should be entered by the Court or the Court should order a new trial."

To the contrary, Mr. Farley and his wife both testified to being avid RV enthusiasts who have owned and used a number of motor homes or recreational vehicle over a period of

-4-

many years. Their testimony, based on years of experience, was sufficient to apprise the jury of the "purpose of RVing." In addition to the repair records that were introduced, the Farleys testified to many problems they experienced with the 2004 Country Coach Magna, and the havoc those problems wrought with their use and enjoyment of that vehicle. Given that testimony, juxtaposed with the cross-examination of the Defendant's witnesses, it was well within the province of the jury to reject the Defendant's theory that, in effect, a purchaser of a half-million dollar motor home should expect it to be largely non-functional.

Nor does Plaintiff's lack of knowledge concerning the precise functioning of the electrical system (the "Silverleaf" system) or any other component negate the jury's verdict. Viewing all the evidence in the light most favorable to the Plaintiff, there was a sufficient factual basis for the jury to conclude that the multiple problems with the 2004 Country Coach Magna were attributable to Country Coach. Defendant's discussions to the contrary, at pp. 5-13 of the Brief in Support [Docket #129], suffice as jury arguments, but do not persuade this Court that the jury's verdict was either unreasonable or against the weight of the evidence. This Court therefore declines to reconsider its pre-verdict decision on Defendant's motion for judgment as a matter of law, or to substitute its wisdom for that of the jury.

Defendant next claims entitlement to a new trial based on inappropriate conduct by Plaintiff's counsel during trial, including closing argument. On a number of occasions, both in its general instructions and when Defendant made specific objections, the Court clearly instructed the jurors that they were to decide the case based on the testimony and evidence presented in court, and that the arguments and statements of counsel were not evidence they

could consider. Jurors are, of course, presumed to follow the court's instructions, and the instructions given in this case were adequate to cure any prejudice arising from counsel's comments. *See Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *Royal Insurance Co. of America v. United Parcel Service, Inc.*, 147 F.R.D. 15, 17 (E.D.N.Y. 1992).

Finally, Defendant argues that the Plaintiff failed to introduce sufficient evidence to support the damage award. For the reasons set forth in the following section, this argument is without merit.

## II.     Modification of Judgment/Remittitur [Docket #128]

In *Denhof v. City of Grand Rapids*, 494 F.3d 534, 547 (6th Cir. 2007), the Sixth Circuit described the standard for remittitur as follows:

> "A jury verdict should not be remitted 'unless it is beyond the maximum damages that the jury reasonably could find to be compensatory for a party's loss.' *Farber v. Massillon Bd. of Educ.,* 917 F.2d 1391, 1395 (6th Cir.1990) (quoting *Green v. Francis,* 705 F.2d 846, 850 (6th Cir.1983)). A court should not reduce an award unless it is: 1) beyond the range supported by proof; 2) so excessive as to shock the conscience; or 3) the result of mistake."

The review of a jury's damages award is extremely deferential, and remittitur or new trial will not be ordered unless the award is "contrary to all reason." *In re Lewis*, 845 F.2d 624, 635 (6th Cir. 1988).

Defendant argues that the jury's award of damages for breach of implied warranty of merchantability is not supported by the evidence. The parties agree that M.C.L. §440.2714 controls damages in a breach of implied warranty case:

> "The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."

See also *Taylor and Gaskin, Inc. v. Chris-Craft Industries*, 732 F.2d 1273 (6th Cir. 1984).

The jury was given an instruction consistent with this statute.[2]

First, the purchase price of the vehicle was approximately $416,00.00. That was the price negotiated and paid by a consumer experienced in buying and using recreational vehicles, a price that would assume the purchase of a vehicle that was fit for the purpose intended. In *Intervale Steel Corp. v. Borg & Beck Div., Borg-Warner Corp.* 578 F.Supp. 1081, 1090 (E.D. Mich..1984), the court found the purchase price to be "strong evidence" of the value of non-conforming goods as warranted:

> "When the fair market value cannot be easily determined, or the parties do not raise it as a measure of 'value', courts have generally relied on the contract's purchase price as strong evidence of the value of the nonconforming goods as warranted. The parties did not present any evidence of the fair market value of the material had it been tendered as warranted. Plaintiff complains of this lack of proof on the part of Borg, however it does not assert nor does it appear that Borg will gain a windfall if the purchase price is used. Further, there was no evidence that the contract price was at all unusual for this high carbon steel.

---

[2]Citing *Leavitt v. Monaco Coach Corp.*, 241 Mich.App. 288, 616 N.W.2d 175 (2000), Plaintiff argues that "one measure of damages is the amount of depreciation that occurs between the time of purchase and the time the purchaser reasonably concludes that the defect in the item purchased cannot be corrected." *Leavitt* is not applicable to the present case. In *Leavitt*, the Court of Appeals upheld a jury instruction, based on the "special circumstances" language of M.C.L. §440.2714, that permitted the jury to consider depreciation in calculating damages. In the present case, Plaintiff neither requested nor received such an instruction, relying instead on the statute's general formula for calculating damages (value of goods that are as warranted minus value of non-conforming goods). In addition, unlike the present case, there was evidence in *Leavitt* as to the specific amount of depreciation.

> Therefore, the contract's purchase price can properly serve as the '*value*' of the goods had they been as warranted under these circumstances." (Footnotes omitted).

In other words, the jury could reasonably infer that the value the 2004 Country Coach Magna as warranted would have had been *at least* $416,000.00, the contract price. I stress "at least" because throughout these proceedings, Defendant has argued that the Plaintiff "negotiated a great deal for himself in purchasing the motor home for $416,000.00." *See Defendant's Motion to Dismiss, Docket #150*, p.5. In making this statement, the Defendant concedes that the suggested list price of the Magna in question was $515,000.00 and that the used, retail value was $434,00.00. Thus, the jury could have found the value of the Magna as warranted to be as high as $515,000.00. Neither $416,000.00 nor $515,000.00 can be considered an "unusually high" price for this vehicle, and the use of either figure to establish value as warranted would not result in a windfall for Plaintiff. *Intervale Steel Corp., supra.*[3]

Further, under the facts as presented at trial, the valuation of the defective motor home at the time and place of acceptance can be based on the trade-in price of $245,000.00 that the Plaintiff received in April of 2006.

Defendant argues that this figure cannot be used because it was the amount paid more than two years after the delivery of the vehicle to Plaintiff, and because, in Defendant's view,

---

[3]Similarly, with regard to the value of the defective motor home, Defendant's reliance on *Deitrick v. National RV, Inc.*, an unpublished California Court of Appeals case with no precedential value, is misplaced. In *Deitrick*, the court reversed a jury award because the plaintiffs "produced no evidence of the fair market value of their motor home in its defective state." As discussed *infra*, the record in this case supports the inference that the value of the defective vehicle was equivalent to the value the Plaintiff received as a trade-in.

this was the "trade in" value, not the retail or wholesale value. Defendant also argues that the Plaintiff did not offer evidence of the amount of depreciation. These arguments are without merit.

First, the Plaintiff clearly testified that the *actual value* of the motor home when he traded it in was $250,000.00, and that he had been given an estimate of $300,000.00:

> Q: Okay. Any reason to doubt the value of the motor home when you traded it in was $250,000?
>
> A: No.
>
> Q: Has anyone else provided you an estimate as to the value of the motor home around the time you traded it in?
>
> A: I was given an estimate also from Buddy Gregg's approximately six months ago for $300,000 for the coach at that time."

The jury could therefore properly infer that the actual value of the motor home in 2006 was between $250,000.00 and $300,000.00. Furthermore, neither the Plaintiff nor the Defendant offered any evidence as to the amount of depreciation, if any. While the Defendant's expert, Mike Pelletier, testified that in general, RVs have large depreciation factors, he gave no opinion whatsoever as to any actual amount of depreciation on this particular vehicle.[4] The Defendant argues that the jury was "left to speculate" as to the amount of depreciation, but in fact, given the Defendant's own failure to offer any concrete

---

[4] In any event, the jury was free to disbelieve all or any of Mr. Pelletier's testimony. Indeed, Mr. Pelletier very much presented himself as a defense witness from Central Casting: self-assured, engaging, even charming on direct examination, yet hostile, argumentative and purposely obtuse on cross examination.

evidence on that issue, the jury–which was told by both the Court and defense counsel that it could not speculate on damages–could properly infer that there was no significant depreciation, and that the diminution in value was due to the defects in the motor home–defects that were present at the time and place of acceptance in 2003. Indeed, in a separate pleading (*see Defendant's Motion to Dismiss for Lack of Jurisdiction, Docket #150*), Defendant, again stressing what an "excellent deal" Plaintiff negotiated, appears to concede that there was little actual depreciation between the date of purchase and the date of trade-in:

> "To that end, as noted above, [Plaintiff] negotiated an excellent deal for himself when he purchased the motor home in question. In addition,...because of this great deal, *the actual value of his motor home had barely declined at all at the time that he filed this lawsuit*." *Id.*, p.6. (Emphasis added).

In short, the evidence in this case was sufficient for a reasonable jury to find, without resort to speculation, that the value of the non-conforming motor home at the time of acceptance (2003) was the same as the value the Plaintiff received when he traded it in (2006): $250,000.00. *See Schultz v. General R.V. Center*, 512 F.3d 754, 759 (6th Cir. 2008) ("...[I]t seems to us that the trade-in value would be as reasonable an estimate of what the R.V. is worth to the Plaintiffs as the retail value").

Finally, Defendant's counsel refers to his post-trial, *ex parte* discussions with jurors in support of his argument that the jurors were confused, or that they engaged in speculation. In deciding this or any other post-judgment motion, however, the Court cannot and will not consider alleged post-verdict statements of jurors in any way. Under Fed.R.Ev. 606(b), a

juror cannot, absent a claim of improper outside influence, testify as to anything bearing on the jury's deliberations or mental processes. Rule 606(b) states:

> "**(b) Inquiry into validity of verdict or indictment.** Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes."

The Senate Report on Rule 606(b) cogently explains the rationale for barring post-verdict scrutiny of jury deliberations:

> "Public policy requires a finality to litigation. And common fairness requires that absolute privacy be preserved for jurors to engage in the full and free debate necessary to the attainment of just verdicts. Jurors will not be able to function effectively if their deliberations are to be scrutinized in post-trial litigation. In the interest of protecting the jury system and the citizens who make it work, rule 606 should not permit any inquiry into the internal deliberation of the jurors."

S.Rep. No. 1277 at 13 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7051. (Quoted in *United States v. Gonzales*, 227 F.3d 520, 525 (6th Cir. 2000)). *See also United States v. Zaia*, 1994 WL 478707, *9 (6th Cir. 1994) ("We decline, however, to go behind the jury verdict in order to dissect hypothetical rationales for the jury's disposition of the various counts against Zaia").

The jury in this case was properly instructed, and arrived at a rational verdict based on reasonable inferences arising from the evidence presented at trial, both as to liability and

damages. Accordingly,

Defendant's Motion for Modification of Judgment, for Remittitur [Docket #128] is DENIED.

Defendant's Motion for Judgment as a Matter of Law (JNOV) or, Alternatively, for a New Trial [Docket #129] is DENIED.

SO ORDERED.

S/R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Dated: March 26, 2008

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 26, 2008.

S/Gina Wilson<br>
Judicial Assistant